J-A14023-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.P., A MINOR | : IN THE SUPERIOR COURT OF |
| | :            PENNSYLVANIA |
| | : |
| APPEAL OF: DEPARTMENT OF HUMAN SERVICES | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 2782 EDA 2025 |

Appeal from the Orders Entered September 25, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000649-2025

BEFORE:  STABILE, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                         **FILED JULY 13, 2026**

The Philadelphia Department of Human Services (DHS) appeals from the juvenile court's September 25, 2025, orders, which vacated its September 23, 2025, order granting DHS's motion for reconsideration and adjudicating A.P., a daughter born in July 2024 (Child),[1] dependent.[2]  After careful review, we are constrained to remand this case for the juvenile court to make findings,

_____

[1] Child and her biological parents, M.M. (Mother) and J.P. (Father), (collectively, Appellees) are parties to the instant appeal.  The Defender Association of Philadelphia (Child's counsel) represents Child; Carla Beggin, Esquire (Mother's counsel), represents Mother; and Karen D. Williams, Esquire (Father's counsel), represents Father.  We refer herein to Mother and Father, collectively, as Parents.

[2] The juvenile court filed three substantially similar orders on September 25, 2025 (the vacatur orders).  Each order vacated the court's September 23, 2025, order, which (1) expressly granted DHS's motion for reconsideration, (2) adjudicated Child dependent, and (3) ordered in-home services for Appellees.

pursuant to 42 Pa.C.S.A. § 6341(a), and to file a supplemental Pa.R.A.P. 1925(a) opinion setting forth its rationale for its determination that Child is not a dependent child.

On July 17, 2025, DHS filed a dependency petition related to Child. Therein, DHS averred that on June 3, 2025, it received a Child Protective Services report that then-11-month-old Child (who suffers from chronic health issues) "had missed important medical appointments[.]" Dependency Petition, 7/17/25, ¶ 5(a). According to DHS, on June 8, 2025, Child was admitted to the Children's Hospital of Philadelphia's (CHOP) pediatric intensive care unit (PICU), where she was intubated and placed on dialysis. *Id.* ¶ 5(d); *see also* N.T., 8/25/25, at 19 (Dr. Bernarda Viteri Baquerizo (Dr. Baquerizo) testifying that Child "has end[-]stage kidney disease," and was admitted to CHOP for "bacteremia, which []is infection to her blood.").[3]

On August 25, 2025, following a hearing, the juvenile court found that Child was not dependent and discharged DHS's petition. Adjudication Order,

---

[3] DHS indicated that on June 23, 2025, Child was in stable condition and moved from CHOP's PICU into standard care. Dependency Petition, 7/17/25, ¶ 5(g). At the dependency hearing, Dr. Baquerizo indicated that she was not aware of Child's projected discharge date. N.T., 8/25/25, at 20.

8/25/25, at 1.[4, 5]  Eighteen days later, on September 12, 2025, DHS filed a motion for reconsideration, to which it attached a proposed rule to show cause order.  *See* Motion for Reconsideration, 9/12/25, ¶ a (citing 42 Pa.C.S.A. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.")).  By order docketed September 17, 2025 (scheduling order), the juvenile court granted the rule to show cause and scheduled a hearing on DHS's motion for September 22, 2025.[6]  The docket, and the scheduling order itself, reflects service of the scheduling order only upon DHS.  *See* Scheduling Order, 9/17/25 (Recipient List).

---

[4] At the conclusion of the hearing, the juvenile court stated, "I truly believe that the family could use the services and some help.  But I don't think [Child] is dependent.  This petition is discharged."  N.T., 8/25/25, at 34.

[5] At the dependency hearing, Child's counsel advocated for a dependency finding.  However, on appeal, Child's counsel "opposes adjudication as a review of the record reveals that [Child] does not meet the definition of a dependent child[,] and the family has demonstrated their ability to provide proper care since [Child] was admitted to CHOP in June of 2025[,] and during the pendency of this appeal."  Child's Brief at 7 n.1.

[6] On September 17, 2025, the juvenile court separately filed an order issuing a rule to show cause and the scheduling order.  Neither order expressly granted DHS's reconsideration motion.  *See Gardner v. Consol. Rail Corp.*, 100 A.3d 280, 283 (Pa. Super. 2014) ("[I]t is well-settled that a motion for reconsideration, unless expressly granted within the thirty-day appeal period, does not toll the time period for taking an appeal from a final, appealable order.").

On September 22, 2025, the juvenile court held a brief hearing, initially attended only by DHS, Child's counsel, and Mother's counsel.[7]  ***See*** N.T., 9/22/25, at 3; ***see also id.*** at 3, 5 (Mother's counsel indicating that, in addition to representing Mother, she was "standing in" for Father's counsel).  The juvenile court noted that "[u]nfortunately, all counsel aren't here because I guess people didn't get notice of the hearing."  ***Id.*** at 3; ***see also id.*** at 6 (Mother's counsel requesting the juvenile court to "order that [Parents' counsel] be opened on PAC File[.]  We were closed because the case was closed out.").  After discussing scheduling conflicts, the juvenile court stated that the matter would be rescheduled for September 25, 2025, and indicated that it was "going to attach all parties" for the hearing.  ***Id.*** at 6.

Thereafter, at some point not apparent from the transcript, Father's counsel appeared.  ***Id.***  The juvenile court held an off-the-record discussion, wherein some argument regarding the substance of DHS's motion for reconsideration occurred, which the juvenile court nevertheless declined to

_____

[7] In Mother's appellate brief, Mother's counsel represents that, though "neither [M]other['s] nor [F]ather's counsel received notice of [DHS's reconsideration m]otion or the hearing date[,] … Mother's counsel was in the building early on September 22, 2025[,] and was paged to the courtroom …."  Mother's Brief at 3.

- 4 -

entertain.[8] *Id.* The hearing subsequently resumed, with Father's counsel identifying herself as "former counsel for [F]ather." *Id.* at 7.[9]

After the matter adjourned, the juvenile court entered an order (rescheduling order) continuing the hearing to September 25, 2025, and finding that "Parents[' c]ounsel [were] unaware of this matter." Rescheduling Order, 9/22/25; *see also id.* (the juvenile court directing that "[a]ll Counsel … be open on P[AC]File[]"). Without explanation, **later that same day, the juvenile court issued an order expressly granting DHS's**

_____

[8] When the hearing resumed, the juvenile court stated the following to unidentified counsel: "Counsel, I understand your argument with respect to [DHS's] reconsideration [motion,] but that's not what we're here for at this juncture. Right now[,] we're just scheduling a date. That is a substantive argument you're making." N.T., 9/22/25, at 7.

[9] In her reply to DHS's motion for reconsideration, Father's counsel explained that she "had no PACFile access" when DHS filed its motion, as her "appointment terminated upon dismissal of the [dependency] petition." Father's Reply, 10/5/25, ¶ 2. While there appears to be no dispute that Parents and their counsel did not receive notice of the September 22, 2025, hearing, we observe that (irrespective of administrative actions that purportedly limited Parents' counsels' access to information concerning the case) the order appointing Father's counsel provided that she "shall represent [Father] until final judgment, including any proceeding upon direct appeal and dispositional review, unless permitted to withdraw …." Letter of Appointment (Father's counsel), 7/21/25; *see also* Letter of Appointment (Mother's counsel), 7/22/25 (same with respect to Mother). The certified record does not contain any motions to withdraw filed by Parents' respective counsel.

**reconsideration motion and adjudicating Child dependent**. Order, 9/23/25.[10]

Notwithstanding the court's September 23, 2025, order, the matter proceeded (as scheduled) to a brief reconsideration hearing on September 25, 2025, at which only DHS and Child's counsel appeared. At the hearing, the juvenile court explained that

> [t]his matter is listed as a motions hearing. It was actually listed this past Monday[, *i.e.*, September 22, 2025,] at which i[t] was continued as [P]arents['] counsel were unaware of the matter. We had a number of side bars on this matter[ at the September 22, 2025, hearing]. The matter was continued. Unfortunately, … **I inadvertently signed a**[**n order**] **granting DHS'**[**s reconsideration**] motion in the interim. I'm vacating that [order] at this junct[ure]. And we need to give this a new date for the motion at this point.

N.T., 9/25/25, at 3 (emphasis added); *see also* Vacatur Orders, 9/25/25 (vacating the September 23, 2025, order, and scheduling a hearing for October 10, 2025); N.T., 9/25/25, at 4 (an unidentified court clerk indicating Father's counsel requested that the rescheduled hearing occur in thirty days; DHS's counsel stating, "respectfully, [Father's counsel] isn't here to explain why she wanted a 30-day date.").[11] DHS did not object to the vacatur and

_____

[10] Though dated September 22, 2025, the order was not docketed until the following day. Upon review, it appears the September 23, 2025, order was one of three proposed orders attached to DHS's reconsideration motion, and included no rationale for the juvenile court's decision.

[11] The juvenile court did not explain Parents' counsels' absence at the September 25, 2025, hearing. In Father's appellate brief, Father's counsel
*(Footnote Continued Next Page)*

advocated for "the soonest date possible[,]" for a hearing on its reconsideration motion. N.T., 9/25/25, at 3-4.

On October 5, 2025, Father filed a "reply" to DHS's reconsideration motion, alleging, *inter alia*, that DHS had no rule-based right to file a post-disposition motion regarding the denial of a dependency petition, and the juvenile court should dismiss DHS's reconsideration motion as "either impermissible or not timely filed." Father's Reply, 10/5/25, ¶ 1.[12]

The matter proceeded to a brief hearing on October 10, 2025, attended by all counsel. After the parties identified themselves for the record, the juvenile court announced it was denying DHS's reconsideration motion. N.T.,

_____

represents that, "[b]ecause the [juvenile] court had granted reconsideration and made a finding of dependency, [P]arents' counsel did not appear for the hearing on September 25, 2025." Father's Brief at 6.

[12] Father repeats this argument in his appellate brief, arguing that the Rules of Juvenile Court Procedure (the Rules) "are silent as to post-trial/post[-]disposition motions practice because the relief to be had for the dismissal of a dependen[cy] petition is either to refile the petition or file an appeal." Father's Brief at 12 (citations omitted). While the Rules themselves do not explicitly provide for the filing of a reconsideration motion, Section 5505 applies to dependency orders. *See In re T.T.*, 842 A.2d 962, 964 (Pa. Super. 2004); *see also Commonwealth v. Hoover*, 231 A.3d 785, 798 (Pa. 2020) (plurality) (Wecht, J., concurring, observing that "[b]y its own terms, [Section 5505] is broad in its scope, containing no prescribed limitations on the type or character of orders that are subject to modification or revocation."). Consequently, the juvenile court was permitted to consider DHS's reconsideration motion under the authority conferred by Section 5505.

10/10/25, at 4; Order, 10/10/25.[13]  On October 16, 2025, DHS filed a second motion for reconsideration.  Father filed a reply the next day.  DHS promptly replied.  The juvenile court did not address DHS's second reconsideration motion or the parties' subsequent filings.

On October 24, 2025, DHS filed a notice of appeal from the vacatur orders.  DHS contemporaneously filed a Pa.R.A.P. 1925(a)(2)(i) concise statement.[14]  The juvenile court filed a Rule 1925(a) opinion (dated January 14, 2026, but erroneously date-stamped January 14, 2025).

In the interim, on November 7, 2025, this Court issued a rule to show cause order (RTSC order), directing (1) DHS to show cause "as to why the[ vacatur o]rders are appealable rather than legal nullities[,]" based on the juvenile court's apparent failure to give proper notice under 42 Pa.C.S.A. § 5505 prior to entering the vacatur orders; and (2) the juvenile court "to respond as to whether the parties were given notice of the[ vacatur o]rders."

_____

[13] Perplexingly, despite having issued an adjudication order (on August 25, 2025) denying DHS's dependency petition, the juvenile court concluded that "[t]his [c]ourt made a decision.  A decision is not an order that can be modified [pursuant to Section 5505].  As a result, this motion is denied."  N.T., 10/10/25, at 4.

[14] DHS's concise statement raised the sole issue of whether the juvenile court abused its discretion when it denied DHS's dependency petition, based upon the evidence presented at the August 25, 2025, dependency hearing.  Concise Statement, 10/24/25, ¶ 1.

RTSC Order, 11/7/25, at 2; *see also id.* (directing the juvenile court to attach to its response the notice given to the parties).[15]

On November 10, 2025, DHS filed a response to our RTSC order requesting "that this Court recognize that the [vacatur] orders are a nullity, terminate the appeal[,] and remand the matter to the [juvenile] court with instructions that the September 23, 2025, order [(granting DHS's reconsideration and adjudicating Child dependent)] is the final, operative order …." Response, 11/10/25, at 2.

The next day, Father filed a motion to quash/dismiss DHS's appeal, wherein he argued the September 23, 2025, order was "a legal nullity," as Parents "had not been served [with] or received notice [of the] September 22, 2025," hearing. Motion to Quash, 11/11/25, ¶ 17.[16]

_____

[15] The juvenile court did not comply with our RTSC order. On January 13, 2026, we issued a separate order directing the juvenile court to transmit to this Court the certified record and its untimely Pa.R.A.P. 1925(a) opinion. Order, 1/13/26; *see also id.* (noting that our efforts to "contact[] the [juvenile court] to remind him of the deadlines" received no response); Pa.R.A.P. 1925(a)(2)(ii) (providing that, in children's fast track appeals, the lower court shall file its opinion within 30 days after receiving the notice of appeal). The juvenile court subsequently transmitted the certified record, which contained the juvenile court's Rule 1925(a) opinion. The juvenile court's opinion did not address the sole issue DHS raised in its Rule 1925(a)(2)(i) concise statement, and instead appears to have analyzed the notice issue we directed the court to address in our RTSC order. *See generally* Juvenile Court Opinion, 1/14/26; *see also* Concise Statement, 10/24/25, ¶ 1.

[16] On December 4, 2025, Father filed a response to our RTSC order, which largely repeated the averments and arguments set forth in his motion to

*(Footnote Continued Next Page)*

On November 14, 2025, DHS filed an answer to Father's motion to quash, stating that it was "not in a position to respond to the factual averments contained in" Father's motion, but "[n]evertheless, dispute[d] the allegations as presented." DHS Answer, 11/14/25, at 1. On November 18, 2025, Father filed a reply, which noted that the docket shows that Parents' counsel were not served [with] DHS's reconsideration motion or notice of the September 22, 2025, hearing. Reply, 11/18/25, at 1; *see also id.* (Father pointing out that, conversely, DHS "readily affirmed [that] the parties did not receive eService/Notice of the September 25, 2025[,] hearing ….").

On December 4, 2025, we denied Father's motion to quash without prejudice to his right to raise the matter before the merits panel. Order, 12/4/25. On December 12, 2025, we discharged our RTSC order based on DHS's response "and the fact that the [juvenile] court ha[d] not responded as ordered by this Court," and referred the matter to the merits panel. Order, 12/12/25.

On January 23, 2026, Mother filed an application to quash DHS's appeal, repeating Father's argument that the September 23, 2025, order is a legal nullity (as it was entered without required notice to Parents or Parents' counsel), and separately arguing DHS's Rule 1925(a)(2)(i) statement was

_____

quash. *See generally* Father's Response, 12/4/25. Father additionally filed, on December 5, 2025, an application for permission to appeal *nunc pro tunc*, which we subsequently denied.

defective. Mother's Application to Quash, 1/23/26, at 6 (unpaginated). We denied Mother's application without prejudice on February 13, 2026.

Having set forth the pertinent facts and ensuing procedural quagmire, we turn to the issues DHS presents in its appeal, which it sets forth as follows:

> 1. Whether the [juvenile] court's [vacatur] order[s are] void under 42 Pa.[]C.S.[A.] § 5505, where the court vacated its September 2[3, 2025,] order without providing notice to the parties, as the statute expressly requires?

> 2. If the [vacatur] order[s are] treated as [] valid corrective order[s], whether the appeal is timely under the doctrine of presumptive validity—because the September 2[3, 2025,] order remained operative on Day 30, DHS was not aggrieved at that time, and appealability runs from the corrective order under *Commonwealth v. Cole*, 263 A.2d 339 (Pa. 1970)?

> 3. Whether the [juvenile] court erred in discharging the dependency petition, where DHS presented clear and convincing prognostic evidence that [Child] is presently without proper parental care and that such care is not immediately available, as required by *Interest of J.R.*, 333 A.3d 446 (Pa. Super. 2025), *In re Swope*, 571 A.2d 470 (Pa. Super. 1990), *In re N.A.*, 116 A.3d 1144 (Pa. Super. 2015), and *In re S.D.*, 334 A.3d 91[9] (Pa. Super. 202[5])?

DHS Brief at 4-5 (some punctuation modified).

DHS's first and second issues implicate our jurisdiction. *See Knopick v. Boyle*, 189 A.3d 432, 436 (Pa. Super. 2018) ("[T]he appealability of an order directly implicates the jurisdiction of the court asked to review the order." (citation omitted)); *see also id.* ("[T]his Court has the power to inquire at any time, *sua sponte*, whether an order is appealable." (citation omitted)).

- 11 -

"To the extent [a dependency] case involves questions pertaining to standing, jurisdiction, and the proper interpretation of statutes and the Pennsylvania Rules of Juvenile Court Procedure, our standard of review is *de novo* and our scope of review is plenary." **Interest of R.P.**, 344 A.3d 783, 787 (Pa. Super. 2025) (citations omitted).

In its first issue, DHS argues that the juvenile court's "handling of the reconsideration motion presents a straightforward statutory violation." DHS Brief at 13. DHS contends the juvenile court's "*sua sponte*" vacatur of the September 23, 2025, order, "without any notice to the parties," violated Section 5505, and was therefore "void." **Id.** at 14. According to DHS,

> once a [juvenile] court grants reconsideration, the original order is rendered non-final, and the parties are entitled to notice and an opportunity to be heard before the court may alter that procedural posture. The absence of notice here is not a mere technical defect, it deprived [DHS] of the procedural protections that [Section] 5505 expressly requires. Because the [vacatur orders were] entered without jurisdiction and without notice, [they are] void. The Superior Court may therefore affirm the September 2[3, 2025,] order on the simple ground[s] that the [juvenile] court lacked authority to vacate its earlier grant of reconsideration.

**Id.** (citation omitted).

Appellees each argue the juvenile court correctly vacated the September 23, 2025, order. **See** Child's Brief at 20 (Child arguing the juvenile court "acted within its inherent authority to correct a mistake that was apparent to all parties from a review of the docket."); Mother's Brief at 7 (Mother arguing the juvenile court "properly vacated an order which was a legal nullity and that all parties knew was entered in error."); Father's Brief at 11 (Father

- 12 -

arguing the juvenile court "did not err in vacating… the grant of [DHS's] motion for reconsideration ….").

As noted above, Section 5505 states that,

> [**e**]**xcept as otherwise provided or prescribed by law**, a court **upon notice to the parties** may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa.C.S.A. § 5505 (emphasis added); *see also **Commonwealth v. Chambers***, 310 A.3d 76, 94 (Pa. 2024) (noting "that the trial court [] could not have altered or modified its verdict under [Section] 5505, … [as n]ot only did the trial court here not provide notice to either party, but [Section 5505] is also limited by its opening clause, '[e]xcept as otherwise provided or prescribed by law'"; further noting "precedents clearly prohibit a trial court from *sua sponte* changing a verdict from not guilty to guilty, except in extraordinary circumstances." (footnote omitted)). We have recognized that Section 5505 applies to dependency orders. ***See In re T.T.***, 842 A.2d at 964 (applying Section 5505 to a dependency order).

Pertinently, dependency proceedings are governed by the Pennsylvania Rules of Juvenile Court Procedure (the Rules). ***See Interest of J.F.***, 308 A.3d 1252, 1257 (Pa. Super. 2024). Rule 1128 mandates that "[a]ll parties, including the child, shall be present at any proceedings unless the exceptions of paragraph (B) apply." Pa.R.J.C.P. 1128(A). Paragraph (B) provides as follows:

(1) *Absence from Proceedings*.  The court may proceed in the absence of a party upon good cause shown except that in no case shall a hearing occur in the absence of a child's attorney.  If a child has a guardian *ad litem* and legal counsel, both attorneys shall be present.

(2) *Exclusion from Proceedings*.  A party may be excluded from a proceeding only for good cause shown.  If a party is so excluded, counsel for the party shall be permitted to be present.

*Id.* 1128(B).  The comment to Rule 1128 emphasizes that "[i]n no case is a proceeding to occur in the absence of the child's attorney.  The court has discretion whether to proceed if the court finds that a party received proper notice of the hearing and has willfully failed to appear."  *Id.*, comment; *see also id.* 1151, comment ("Because of the nature of the proceedings, it is extremely important that every 'guardian' has an attorney.").

Regarding notice of adjudicatory hearings, Rule 1360 requires the juvenile court to issue a summons, in writing, compelling all parties to attend, which sets forth the date, time, and place of the hearing.  *Id.* 1360(A), (C)(1), (2); *see also id.* 1361 (requiring the court to give notice of the adjudicatory hearing to, *inter alia*, the county agency; the child's attorney; the guardian's attorney; and the parents providing care for the child); *cf. id.* 1501 (requiring the court to provide notice of a dispositional hearing to, *inter alia*, the same parties and attorneys).

Concerning the manner in which an adjudicatory hearing must be conducted, Rule 1406 requires the court to determine "whether notice requirements pursuant to Rules 1360 and 1361 have been met[.]"  *Id.*

- 14 -

1406(A)(1)(a). Rule 1406 additionally prescribes that each party be afforded the opportunity to "introduce evidence," "present testimony," and "cross-examine any witness." *Id.* 1406(C)(1)-(3).

We have further recognized that

[a] parent has the right to due process in any dependency case involving his or her child. *See, e.g.*, *In Interest of Jones*, 429 A.2d 671 (Pa. Super. 1981). This right is not without limit, however. *See S.T. v. R.W.*, 192 A.3d 1155, 1161 (Pa. Super. 2018) ("Due process is flexible and calls for such procedural protections as the situation demands."). "'[P]rocedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case.'" *Id.* at 1161 (quoting *J.M. v. K.W.*, 164 A.3d 1260, 1269 (Pa. Super. 2017)).

*Interest of A.D.-G.*, 263 A.3d 21, 27 (Pa. Super. 2021) (citations modified).

Here, though all parties agree that a juvenile court is required to give notice before modifying or rescinding an order, none cite legal authority providing that Section 5505 requires prior notice of a modification or rescission of a dependency order. Indeed, Section 5505 jurisprudence is nuanced and, at times, divided regarding whether prior notice of a modification or rescission of an order is required. *Compare Commonwealth v. Blair*, 230 A.3d 1274, 1277 (Pa. Super. 2020) (in the criminal context, relying on Section 5505's notice requirement and procedural due process principles, holding that "[m]odification of a sentence without notifying the defendant is inconsistent with the accused being present at every vital stage of the criminal process." (citation and quotation marks omitted)); *and Commonwealth v. Zuder*, 469 A.2d 687, 689 (Pa. Super. 1983) (stating that "a court may alter an order,

- 15 -

decree, judgment or sentence … within [30] days of the date of entry of the original order …, provided[] the court affords the parties with prior notice." (citations omitted)); **with Commonwealth v. Daniels**, 963 A.2d 409, 418 (Pa. 2009) (holding that "while there are some circumstances when prior notice may be necessary, the limited procedural circumstances for which Section 5505 was being invoked in this case did not demand prior notice." (footnote omitted)); **and Commonwealth v. Allen**, 575 A.2d 131, 133 (Pa. Super. 1990) (addressing "whether the trial court lacked authority to reinstate the charges and withdraw the court[-]ordered dismissal within thirty days of the initial order, without prior notice"; stating that "[a]ccording to [Section 5505], a court must notify the parties when it modifies or rescinds an order, but this notice does not have to be prior to the modification.").

Instantly, based upon our review of the law and record, we conclude the juvenile court's entry of the vacatur orders was a valid exercise of its authority under Section 5505.

As set forth at length above, at the September 22, 2025, hearing, the juvenile court acknowledged that Parents were not provided notice of the hearing. Though Parents' respective counsel ultimately appeared (albeit without the opportunity to prepare for the hearing or consult with their clients), the juvenile court did not permit argument concerning the substance of DHS's reconsideration motion. Nevertheless, the next day, after having already issued a conflicting order rescheduling the matter for further

proceedings, the juvenile court granted DHS's reconsideration motion, found Child dependent, and ordered in-home services.

The juvenile court's order granting DHS's reconsideration motion was at odds with (1) the rescheduling order; (2) the notice requirements of both the Rules (which plainly contemplate prior notice and a right to representation before a dependency finding is made) and Section 5505 (which itself circumscribes a court's authority to modify an order "as otherwise provided or prescribed by law"); and (3) Parents' right to procedural due process. *See* 42 Pa.C.S.A. § 5505; Pa.R.J.C.P. 1361; *Interest of A.D.-G.*, 263 A.3d at 27. Consequently, the juvenile court's entry of the vacatur orders was an appropriate exercise of its authority, pursuant to Section 5505, to rectify the procedural deficiencies attendant to its entry of the September 23, 2025, order.

Although DHS complains that the juvenile court did not provide prior notice of its intent to vacate the September 23, 2025, order, DHS was aware of (and had the opportunity to be heard at) the hearing during which the juvenile court issued the vacatur orders. *See Daniels*, 963 A.2d at 418 (concluding that "[s]ince appellees were present **and heard** at the [reconsideration] hearing, … the notice requirement [of Section 5505] was satisfied." (citation omitted; emphasis in original)). Accordingly, the vacatur orders are not legal nullities. DHS's first issue merits no relief.

In its second issue, DHS argues that, despite the procedural irregularities present in this case, its appeal is timely. DHS Brief at 15-18.

We initially observe that Pennsylvania Rule of Appellate Procedure 903(a) requires an aggrieved party to file a notice of appeal "within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a); *see also Hagans v. Hosp. of Univ. of Pennsylvania*, 341 A.3d 188, 190 (Pa. Super. 2025) ("A party is aggrieved when the party has been adversely affected by the decision from which the appeal is taken." (citation and quotation marks omitted)); *Commonwealth v. Powell*, 290 A.3d 751, 755 n.8 (Pa. Super. 2023) ("[O]ne's failure to appeal timely from an order generally divests the appellate court of its jurisdiction to hear the appeal." (citation and quotation marks omitted)). Rule 341(a) provides that "an appeal may be taken as of right from any **final** order of a … trial court." Pa.R.A.P. 341(a) (emphasis added). Rule 341 defines a "final order," *inter alia*, as an order that "disposes of all claims and all parties[.]" Pa.R.A.P. 341(b)(1).

Regarding the effect of motions for reconsideration on appeal deadlines, we have recognized that

> it is well settled that a motion for reconsideration, unless expressly granted within the thirty-day appeal period, does not toll the time period for taking an appeal from a final, appealable order. *Valley Forge Center Associates v. Rib–It/K.P., Inc.*, 693 A.2d 242[, 245] (Pa. Super. 1997). As we noted in *Valley Forge*, the "mere filing of a motion for reconsideration is insufficient to toll the appeal period." We continued that "the 30–day appeal period is tolled only by a timely order 'expressly granting' reconsideration" of the final appealable order. *Id.* at 245. Concomitantly, "either the lapse of 30 days beyond the date of entry of an original order,

- 18 -

or the filing of a notice of appeal will vitiate the jurisdiction of the trial court to modify, alter, or otherwise proceed further in the matter." *Id.* Thus, "If a trial court fails to grant reconsideration expressly within the prescribed 30 days, it loses the power to act upon both the petition for reconsideration and the original order." *Id.*; *see also PNC Bank, N.A. v. Unknown Heirs*, 929 A.2d 219, 226 (Pa. Super. 2007). These principles are premised upon application of [Section] 5505....

*Gardner*, 100 A.3d at 283 (ellipsis and brackets omitted; some punctuation modified). We have further observed that "[a]n order **denying** a motion for reconsideration is not a final order and, thus, not appealable." *Oliver v. Irvello*, 165 A.3d 981, 983 n.1 (Pa. Super. 2017) (citation omitted; emphasis added).

Where, however,

the court expressly grant[s] reconsideration within thirty days of [its final, appealable] order, **the time for filing a notice of appeal** [**begins**] **to run anew after entry of the decision on reconsideration**. This [is] true regardless of whether or not the court's decision amounted to a reaffirmation of its prior determination.

*Schoff v. Richter*, 562 A.2d 912, 913 (Pa. Super. 1989) (citation omitted; emphasis added).

Here, the juvenile court entered a final order on August 25, 2025, denying DHS's dependency petition. Twenty-nine days later, within the appeal period, the juvenile court **expressly granted** DHS's reconsideration motion. Two days thereafter, then outside of the initial appeal period, the juvenile court issued the vacatur orders, from which DHS filed its notice of appeal.

- 19 -

Though filed outside of the original appeal period following the August 25, 2025, adjudication order, DHS argues that the instant appeal is timely "under the doctrine of presumptive validity." DHS Brief at 15. DHS cites ***Com. ex rel. Powell v. Pennsylvania Dep't of Corr.***, 14 A.3d 912, 916 (Pa. Cmwlth. 2011),[17] for the proposition that "an order, even if erroneous, 'imports verity' and is conclusively presumed to reflect the court's actual judgment unless and until corrected in a direct proceeding." ***Id.***

DHS continues,

[a]pplying that principle here, the September 2[3, 2025,] order granting reconsideration and finding [C]hild dependent was the only operative order on the thirtieth day following the August 2[5, 2025, adjudication order]. Regardless of whether the September 2[3ʳᵈ] order was entered in error, ***Powell*** requires that it be treated as the [juvenile] court's authentic judgment until the court formally corrected it. Thus, on [d]ay 30[ of the appeal period], the August 2[5] "no-dependency" order was no longer the controlling disposition; the September 2[3, 2025,] dependency finding was.

Because the September 2[3, 2025,] order declared [C]hild dependent, DHS was not an "aggrieved party" on [d]ay 30 for purposes of Pa.R.A.P. 501[ (Any Aggrieved Party May Appeal)]. Here, the September 2[3, 2025,] order granted DHS the very relief it sought: a dependency adjudication. DHS therefore had no right, and indeed no ability, to appeal on [d]ay 30. Without an

---

[17] Although DHS relies on a Commonwealth Court opinion, which we may consider only for its persuasive value (***see Commonwealth v. Segarra***, 228 A.3d 943, 950 (Pa. Super. 2020)), the Commonwealth Court in ***Powell*** premised its reasoning on decisions of this Court. ***See Powell***, 14 A.3d at 916 (quoting ***Com. ex rel. Woods v. Howard***, 378 A.2d 370, 372-73 (Pa. Super. 1977), which stated that a "sentence or judgment" "incorrectly entered upon the records of the court … imports verity when collaterally assailed … [u]ntil corrected in a direct proceeding[.]")).

aggrieved party, there was no appealable order, and the 30-day appeal period could not have expired.

DHS Brief at 15-16.

Upon our review of the parties' arguments[18] and applicable law, we conclude that DHS's appeal from the vacatur orders is timely and reviewable. When the juvenile court **expressly granted** DHS's reconsideration motion (within thirty days of its entry of the August 25, 2025, adjudication order), the September 23, 2025, order replaced the adjudication order, and the appeal period would "run anew after entry of the decision on reconsideration." **Schoff**, 562 A.2d at 913. "This would be true regardless of whether or not the court's decision amounted to a reaffirmation of its prior determination." **Id.** (citing Pa.R.A.P. 1701(b)(3)(ii)).

Instantly, the juvenile court's vacatur orders "amounted to a reaffirmation of its prior determination." **Schoff**, 562 A.2d at 913. Thus, pursuant to **Schoff**, the appeal period began to "run anew" upon their entry.[19]

_____

[18] Appellees do not address **Powell**, **supra**. Child argues that "DHS knew that the order it purport[ed] to have relied on [(*i.e.*, the September 23, 2025, order)] when declining to appeal the August 25, 2025[, adjudication] order within 30 days was invalid when it was entered, therefore reliance on it was unjustified." Child's Brief at 17 n.5. Father contends that, because DHS's Pa.R.A.P. 1925(a)(2)(i) concise statement references the August 25, 2025, adjudication order, its appeal actually lies from that order and is, therefore, untimely. **See** Father's Brief at 12. Mother does not address the timeliness of the instant appeal.

[19] Further, the entry of the vacatur orders effectively disposed of all claims of all parties. **See** Pa.R.C.P. 341(a) ("[A]n appeal may be taken as of right from
*(Footnote Continued Next Page)*

- 21 -

*See id.* Under the unique circumstances of this particular case, we will not quash the appeal.

We find support for our reasoning in *Nicolais v. Nicolais*, 431 A.2d 1070 (Pa. Super. 1981), which also involved an unusual procedural posture. In *Nicolais*, the appellee argued that the "appeal should be quashed because [the] appellant failed to appeal from the [original] October 17, 1980, Support Order, but instead appealed from the December 10, 1980, Order of Court, which vacated the November 13, 1980, Order of Court which, in turn, had vacated the support order of October 17, 1980." *Id.* at 327-28 (some punctuation modified).

We agreed with the appellee that "the court below was without power to extend the time for the appeal." *Id.* at 328. However, our

> review of the transcript made of the proceedings of December 10, 1980, convinces us that the court, in first vacating the original support order on November 13, 1980, and then vacating the order to vacate, did not act as it did in order to extend the time for appeal. When the court vacated its support order on November 13, 1980, the appellant was still within the appeal time of the October 17, 1980, support order. Since the court below vacated the original support order on November 13, 1980 (at appellant's request which was made *ex parte*), **the appellant had nothing from which to appeal during the period of November 13, 1980, until December 10, 1980, when the court below vacated its vacate order**. Were we convinced that the above-mentioned set of circumstances was designed for the purpose of extending the appeal period we would not countenance such actions and would quash the appeal. Because we are not so

_____

any final order …."), (b)(1) ("A final order[] … disposes of all claims and of all parties[.]").

> convinced we will not quash the appeal of the December 10, 1980, order vacating the vacate order of November 13, 1980.

***Id.*** (some punctuation modified; emphasis added).

Here, upon review, we are likewise unconvinced that the circumstances leading to the juvenile court's September 23, 2025, order granting DHS's motion for reconsideration were designed to extend DHS's right to appeal. DHS was lawfully permitted to file its reconsideration motion, and the procedural irregularities that followed do not evidence an intent on the part of either the juvenile court or DHS to artificially extend the adjudication order's appeal deadline. Were we to hold otherwise, we would license a lower court to artificially **shorten** an appeal period by granting reconsideration within the 30-day appeal period, and subsequently vacating that grant outside the appeal period. Moreover, quashing DHS's appeal from the vacatur orders would also deprive DHS of any opportunity to appeal the otherwise-appealable August 25, 2025, adjudication order. ***See Criss v. Wise***, 781 A.2d 1156, 1160 (Pa. 2001) ("Even when a party has filed an untimely notice of appeal, [] appellate courts may grant a party equitable relief in the form of an appeal *nunc pro tunc* in certain extraordinary circumstances." (citation omitted)).

In summary, DHS appropriately appealed from the vacatur orders. The September 23, 2025, order expressly granted DHS's reconsideration motion, and the vacatur orders "reaffirmed" the juvenile court's adjudication order. ***Schoff***, 562 A.2d at 913. Under this unique procedural posture, we conclude the instant appeal is properly before us.

Having resolved the above jurisdictional questions, we arrive at DHS's third and final issue, which challenges the juvenile court's denial of DHS's dependency petition. DHS Brief at 18-22. DHS claims the juvenile court erred and abused its discretion by failing to (1) consider Parents' ability to meet Child's "needs going forward"; (2) "address the uncontroverted medical testimony about the life-threatening consequences of missed monitoring, or"; (3) "evaluate [P]arents' past conduct as prognostic evidence …." *Id.* at 21-22.

Unfortunately, we are unable to review the substance of DHS's third claim, as we are without the benefit of the juvenile court's reasoning. The juvenile court did not, as required by 42 Pa.C.S.A. § 6341(a), "make and file its findings as to whether the child is a dependent child." In its adjudication order determining Child is not dependent, the juvenile court indicated that "[t]he findings of fact are set forth in the record of this case." Adjudication Order, 8/25/25, at 1; *see also id.* at 2 (under the "Further Findings" heading, finding that Child "is current[ly] hospitalized at CHOP."). Upon review of the record, however, the juvenile court merely stated, "I truly believe that the family could use the services and some help. But I don't think [Child] is dependent. This petition is discharged." N.T., 8/25/25, at 34. Moreover, the juvenile court's Rule 1925(a) opinion does not address the merits of DHS's appeal.

Without the juvenile court's findings or rationale (which are contained nowhere in the record), our review is impeded, as the tasks of weighing evidence and making credibility determinations run counter to our standard of review. *See id.* at 716 ("The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the juvenile court if they are supported by the record[.]"); *see also Interest of M.Y.C.*, 230 A.3d 500, 512 n.15 (Pa. Super. 2020) ("We accord great weight to the juvenile court's fact-finding function because the juvenile court is in the best position to observe and rule on the credibility of the parties and witnesses." (citation and brackets omitted)).

Accordingly, we are constrained to remand this matter for the juvenile court to address the above-stated record deficits. *See Interest of M.K.L.*, 354 A.3d 42, 71 (Pa. Super. 2026) (in an agency appeal from the juvenile court's denial of a termination of parental rights petition, where the juvenile court's faulty legal reasoning resulted in, *inter alia*, incomplete factual findings, holding that the remedy "is not simply reversing the juvenile court's order denying termination," but remanding for the court to "apply the correct legal standard … and to use its discretion to reach a conclusion."). On remand, within 30 days, the juvenile court shall make and file findings pursuant to 42 Pa.C.S.A. § 6341(a), and file a supplemental Rule 1925(a) opinion addressing DHS's claim that it erred by finding Child not to be dependent (to which it shall attach its Section 6341(a) findings).

We direct the Prothonotary, upon receipt of the juvenile court's supplemental opinion, to set a new briefing schedule to allow the parties to address the supplemental Pa.R.A.P. 1925(a) opinion and thereafter list the case for argument.

Case remanded with instructions. Panel jurisdiction relinquished.

Judge Nichols joins the memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/13/2026